UNITED STATES v. GREENE et al.

(District Court, S. D. of Georgia. E. D. March 22, 1906.)

CRIMINAL LAW—EVIDENCE—EXPERT TESTIMONY—CONFORMITY OF WORK TO CONTRACT.

An engineer, testifying as an expert in respect to work done under a government contract for a river and harbor improvement, may properly give his opinion upon the question whether a stated form of construction of a part of the work was within the specifications for such part contained in the contract, which is an engineering question; but it is not competent for him to state his opinion whether or not such mode of construction was permissible under the contract as a whole, or under other provisions authorizing its modification, which involves a construction of the contract, and is not within the province of an expert or other witness.

[Ed. Note.—For cases in point, see vol. 14, Cent. Dig. Criminal Law, § 1059; vol. 20, Cent. Dig. Evidence, §§ 2311, 2317.]

On Objection by the Government to a Question Asked an Expert Witness by the Defense.

See 115 Fed. 343.

Marion Erwin, U. S. Atty., Samuel B. Adams and Thomas F. Barr, Sp. Assts. to U. S. Atty., and Alexander Akerman, Asst. U. S. Atty.

William Garrard, Peter W. Meldrim, William W. Osborne, and Alexander A. Lawrence, for defendants.

SPEER, District Judge. The following question is propounded to Mr. Ripley, a civil engineer, who on behalf of the defense is testifying as an expert.

Question by Mr. Osborne: "After reading, Mr. Ripley, the specifications for 1892 and 1896, in Savannah and Cumberland Harbor, will you state

whether or not it is your engineering opinion as to whether or not the multiple mat, as described by you, is permissible under those specifications?"

The question, as expressed, is one of that character which is calculated, in the absence of close and critical attention, to embarrass the court and possibly the jury also. The specifications, in view of which the contracts were made for the improvements proposed under the contracts of 1892 and 1896 by the proper authorities of the government and accepted by the contractors, constitute a written contract. About this contract there is no ambiguity whatever. It provides for three designs of mattress. The third design is that which the government contends was to be used in the construction of the works in question. It is described as follows:

"This mattress will consist of a bottom grillage of poles of live saplings' of pine or other timber of a kind approved by the engineer officer in charge. The poles must be straight, of slight taper, of an average diameter of from four to five inches, and not less than three inches at the small end, and must be placed from four to eight feet apart between centers, both longitudinally and transversely, and spliced together with long scarf joints in a manner satisfactory to the engineer officer in charge. Upon this grillage will be placed a layer of closely compacted fascines surmounted by a top grillage similar in design to the one at the bottom. The poles of each grillage will be securely fastened together by suitable wire or rope lashings, and the upper and lower grillages will also be securely fastened together in such manner as the engineer officer in charge may approve."

It is now offered to prove by this witness that a multiple mat, such as that he has described, is permissible under the specifications, taking them as an entirety. Pretermitting for the present the inquiry whether or not the witness himself has described a multiple mat, or whether in the science of engineering a multiple mat is anywhere technically designated by that name, it would seem that the question resolves itself to this: Taking the specifications as an entirety, is it competent for the defense to show by one of its experts that to construct a multiple mat of eight courses of loose brush is a compliance with the precise and definite specifications as described in the plan of mattress No. 3? To this question as a whole the court has no right to deny the witness the power of answering "Yes" or "No" as he may think proper. For support to this answer, however, he has no right to look to the construction of the contract. That is not within his province. That is a matter for the court. It would be, therefore, wholly unjustifiable for the witness to rely for the propriety and correctness of his answer, if he chooses to make it, upon any other clause of the contract save the specifications, which define what the mattress No. 3 should be. The discretionary powers of the engineer under the superintendence of the War Department, the increase or diminution of the price to be paid accordingly as such discretion may be exercised in requiring a more costly or a cheaper structure, is not within the range of the witness' duty. These are options which, in the first instance, belong entirely to the party of the first part, namely, the government of the United States. The court rules, therefore, that the witness has no power to base his answer upon any construction of the contract which

may have impressed itself upon his mind. Any alterations in the contract, if made, must be made in accordance with the law, and with an increase or diminution of the price according to the facts, as the law and the contract prescribe. He may look to the literal specifications of the third design, and say whether or not the multiple mat, as it appears from the evidence, is a compliance with those specifications. To this extent the testimony will be regarded as that of an expert in the line of his profession as an engineer. He has no right and no power to look to other clauses of the contract, and place upon them such construction as he thinks proper, and then determine whether the multiple mat is a compliance with some clause of the specifications which has no necessary relation to mattress No. 3. To accord him this power would be to turn over to him the functions of both the court and the jury. At the proper time it will be the duty of the court to construe the contract. To hold otherwise on this question would make it possible for an expert to testify that, after the government and the contractors had entered into a distinct and specified contract to accomplish a piece of work by distinct methods and specified forms of material, another and entirely distinct contract for completing the project originally designed was permissible under the provisions of the first made. This far transcends the privileges of an expert or any other witness. It is per se a judicial function.

The witness will be permitted to answer if such a multiple mat as has been described, or which he may, if he thinks proper, describe, is permissible in view of the specified description of mattress No. 3, but beyond this the question upon this particular topic will not be allowed. If, however, it is or may be contended from the evidence that any other one of the three designs of this contract were adopted by the engineer for use in the construction of these jetties, the witness may be asked if such a multiple mat is permissible, or is a compliance with such specifications. His opinion, however, must be held down to the engineering problems involved, and may not extend to any opinion on his part involving the legal effect of the language used in the contract.